**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ALFREDA KECK and DEVON KECK,

    Plaintiffs,

v.                                        Case No. 07-CV-11042-DT

GRAHAM HOTEL SYSTEMS, INC.,

    Defendant.

                                      /

**OPINION AND ORDER GRANTING
DEFENDANT'S "MOTION FOR RULE 11 SANCTIONS"**

Pending before the court is "Defendant's Motion for Rule 11 Sanctions, Attorney Fees Under 42 U.S.C. § 1988 and 28 U.S.C. § 1927 and for Taxable Costs Pursuant to Rule 54(d)(1)." The motion has been fully briefed and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

On March 12, 2007, Plaintiffs Alfreda Keck and Devon Keck, who are African-American, filed a complaint against Defendant Graham Hotel Systems, Inc. in this court, alleging race discrimination in violation of 42 U.S.C. § 1981 and the Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2302. Specifically, Plaintiffs claimed that Defendant refused to enter into a contract with Plaintiffs because of their race, and Plaintiffs were for that reason unable to hold their wedding reception either on their desired schedule or at Defendant's hotel, the Kensington Court Hotel ("Kensington Court").

On April 21, 2008, Defendant moved for summary judgment. Shortly thereafter, Defendant filed the current motion seeking sanctions and costs for what it contends was Plaintiffs' "action without appropriate factual or legal support [that Plaintiffs] continued to litigate . . . without developing either the factual and/or legal support necessary to sustain the action and after it was clear that the factual and/or legal support was absent." (Def.'s Mot. at 2.) The court entered an opinion and order granting Defendant's motion for summary judgment but did not, at that time, address the current motion.[1]

## II. DISCUSSION

### A. Rule 11 Violation

Defendant seeks sanctions against "both Plaintiffs and their attorneys under [Federal Rule of Civil Procedure] 11" (Def.'s Mot. at 12), an award of attorney fees under both 42 U.S.C. § 1988 and 28 U.S.C. § 1927 (*Id.* at 18), and taxable costs under Federal Rule of Civil Procedure 54(d)(1). (*Id.* at 19.) As Defendant notes, the relief available under Federal Rule of Civil Procedure 11 ("Rule 11"), in the form of sanctions, can constitute the same relief available under § 1988 or § 1927.[2] Because the court, as detailed below, concludes that Rule 11 sanctions are appropriate to sufficiently

---

[1] The court's June 30, 2008 described the facts of this matter in substantial detail. (*See* 6/30/08 Order at 2-4.) As such, and because that detail is largely irrelevant to the current motion, the court will not repeat the same background information here.

[2] Defendant asks for either Rule 11 sanctions "in the amount of all its attorney fees and costs *or* the same relief alternatively under 42 U.S.C. § 1988 and 28 U.S.C. § 1927." (Def.'s Mot. at 20) (emphasis added).

compensate Defendant, the court need not render an analysis under the alternative theories of relief argued by Defendant.

Federal Rule of Civil Procedure 11(b) requires that,

> [Upon] presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). Rule 11, as amended in 1983, replaced the prior good-faith standard of assessment with the "more stringent" "reasonableness under the circumstances" test, with the intent that "a greater range of circumstances [would] trigger its violation." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988) (citing *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir. 1986)). The standard imposes an affirmative duty on an attorney, requiring "some prefiling inquiry into both the facts and the law," *Albright*, 788 F.2d at 1221, as well as a "continuing responsibility to review . . . pleadings, and if necessary, to modify them to conform with Rule 11." *Dietrich v. Sun Exploration & Prod. Co.*, Nos. 92-1981, 93-1442, 1994 WL 108961, *9 (6th Cir. 1994) (citing *Mann v. G&G Mfg., Inc.*, 900 F.2d 953 (6th Cir. 1990)).

The court finds here that the Plaintiffs individually, and their attorney, Stephen Dane, should be sanctioned for their conduct in initiating the prosecution of this matter,

3

continuing it or both. First, though, the court does not agree with Defendant that Plaintiffs' initial factual allegations, taken as a whole, constitute a Rule 11 violation. Even though the court found that Plaintiffs' evidence was insufficient to establish the *prima facie* case of race discrimination required to withstand Defendant's motion for summary judgment (6/30/08 Order at 12), the court cannot conclude that the circumstantial evidence provided[3] amounts to a pleading that was at the outset "not well grounded in fact," *Herron*, 858 F.2d at 335 (quotation omitted), such that an obvious violation occurred. There is, however, at least one central factual allegation that was both "admittedly false" (Def.'s Mot. at 9) and so significant as to convince the court that Rule 11 was violated and that sanctions in response must be imposed.

Rule 11 sanctions may be imposed on Plaintiffs, being represented persons, only if the court finds that "an attorney" violated the rule. Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading . . . an attorney or unrepresented party . . ."). As proper context for a violation by Plaintiffs' counsel, however, it is necessary to first examine the problematic factual allegation. In their complaint, Plaintiffs alleged that "[b]ecause of Defendant's refusal to enter into a rental contract with them, Plaintiffs were unable to hold their wedding reception in Ann Arbor on October 8, 2005 . . . [and they were] forced to delay their wedding date until the spring of 2006." (Pls.'s Compl. at ¶¶ 13-14.) The problem with Plaintiffs' allegation is that an alleged "refusal to enter into a rental contract" was not the actual reason that Plaintiffs did not hold their wedding in

---

[3] Though ultimately insufficient to withstand summary judgment, Plaintiffs provided testimony of perceived negative treatment by the hotel and the results of testing performed by the Fair Housing Center of Southeastern Michigan, among other evidence.

Ann Arbor on October 8, 2005, nor did it have anything to do with why Plaintiffs waited until the next May to be married.[4] As Plaintiff Alfreda Keck admitted in her deposition (and reiterates in the response to Defendant's motion), the truth was that her unplanned pregnancy precipitated the delay:

> Q. And why did you decide not to go forward with the October 8, '05 wedding date?
>
> A. Because at that time I was not sure of the due date of the baby.
>
> . . .
>
> Q. So the reason you decided to put off the October 8, '05 wedding was the pregnancy?
>
> A. That's correct.

(Def.'s 4/21/09 Mot., Ex. 9 at p. 34; *see also* Pls.'s Resp. at 14.) When confronted with the reason for the delay in the wedding date as stated in the complaint, Mrs. Keck could only respond that the reason was "not true." (Def.'s 4/21/09 Mot., Ex. 9 at p. 144.) Defendant sought clarification the falsehood in the complaint,

---

[4] Defendant also argues that Plaintiffs' allegation that "defendant's event planner never contacted them" (Compl. at ¶ 11), is "clearly false" in light of testimony that Plaintiff Alfreda Keck admitted speaking with one of Defendant's employees, Ally. (Def.'s Mot. at 9-10.) Andrea Keck's admission that there was, in fact, contact from the hotel concerning a reservation provides some evidence that Plaintiffs' allegation was reckless, misleading or simply false. But, having heard Plaintiffs' argument that they were not clear about the *job title* of the employee who did contact them (Pls.'s Resp. at 13 n. 13), in combination with evidence suggesting that only a properly authorized person could commit on behalf of the hotel, the court will not say that Plaintiffs' allegation that the "*event planner* never contacted them" was so utterly without factual support so as to constitute a Rule 11 violation.

5

> Q. Is there some reason when you read [the complaint] – you know it's going to be filed in Federal Court by your attorney. This is another statement in here that's not true. Is there some reason why you didn't get this corrected before you filed it?
> A. Reading it over now, I should have made those corrections.

(*Id.*)

Thus, Mrs. Keck admitted that she knew at the time of filing her complaint that it contained at least one factual contention – a central one – that was not only without "evidentiary support," Fed. R. Civ. P. 11(b), but was actually false.

The court also finds the behavior of Plaintiffs' attorney, Stephen Dane,[5] constituted a violation of Rule 11. It is true that, assuming his clients were not candid with him, Dane would have been unaware of the false reason provided for delaying the wedding when the complaint was filed on March 12, 2007. But he was certainly aware of it after Mrs. Keck admitted it, in his presence, during her deposition on October 29, 2007. (*See, e.g.*, Def.'s 4/21/09 Mot., Ex. 9 at p. 9.) This is especially true since Plaintiffs' fraudulent statement was identified by defense counsel more than once during the deposition. *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 530 (6th Cir. 2006) ("[I]t is useful to look at whether other parties to the litigation recognized counsel's error at the time it was made. A mistake can hardly be characterized as unreasonable . . . when the mistake is made by all parties to the litigation."). Dane did not fulfil his "continuing responsibility to review [the] pleadings," *Mann*, 900 F.2d at 959, and made no correction to the factual basis for a damages assessment.

---

[5] Plaintiffs' response also lists Paul A. Callam as an "[a]ttorney for Plaintiffs." (Pls.'s Resp.) Callam did not sign the Plaintiffs' complaint or the response to Defendant's current motion though. Nor does it appear that he attended Mrs. Keck's deposition. As such, the court will not now find Callam to have violated Rule 11.

Notably, Dane, while now admitting the falsehood, attempts to minimize and defend against its impact on Defendant by arguing that, "[c]ertainly there can be no Rule 11 violation merely because a plaintiff fails to prove a necessary causal link between the defendant's legal violation and one element of specialized damages." (Pls.'s Resp. at 15.) This, however, is not a case where a plaintiff simply "fails to prove" an asserted causal link to a damage claim of some interest; in this case, Plaintiffs manufactured from whole cloth and, with their lawyer's specific knowledge, allowed to be maintained a purported causal link that not only has no evidentiary support but is plainly false. The court finds Dane violated Rule 11(b) and is thus subject to sanctions.

## B.  Rule 11 Sanctions

If the court finds a violation of Rule 11(b) has occurred, "the new rule mandate[s] the imposition of sanctions." *Herron*, 858 F.2d at 335 (citing *INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 401 (6th Cir. 1987)). But the actual "selection of the type of sanction to be imposed lies . . . within the district court's sound exercise of discretion." *Albright*, 788 F.2d at 1222 (quotation omitted). This discretion includes designating the individuals to be sanctioned, as Rule 11 directs the imposition of sanctions on "any attorney . . . or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The court also has discretion in determining the nature of the sanction.[6]

---

[6] The nature of the sanction may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

7

Both of the Plaintiffs, as well as their lawyer, should be sanctioned. Plaintiffs Alfreda and Devon Keck were aware of the true reason for their choice to delay their wedding since before the inception of this matter, but, in their complaint, cited that delay as the central harm done to them and attributed it to Defendants. Further, they read the complaint and later were forced to admit that they made no attempt to correct the pleading containing the statement that was "not true" before or after its filing, and that they "should have made those corrections." Attorney Dane was aware of the falsehood at least since the time of Plaintiff Alfreda Keck's deposition on October 29, 2007.

Plaintiffs' argue that, while the statement in the complaint is admittedly false, the "allegations about a delayed wedding date relate only to the issue of *damages*, not liability." (Pls.'s Resp. at 15) (emphasis in original). The court is aware of no limitation in Rule 11, however – Plaintiffs point to none – that presenting a knowing falsehood is less harmful because it might only impact the significance of the damages available to a plaintiff. Defense attorneys, in general, expend their client's resources in defending *all* parts of a case, including exploration of and preparation against a damages assessment. Moreover, in this case the falsehood that Plaintiffs classify as something in the form of a mere "causal link" is, in fact, something much more significant. Based *specifically* upon Defendant's alleged but substantially unsupported discriminatory behavior, Plaintiffs claimed that their wedding was delayed and that they suffered great harm. That is more than a mere causal link to damages. There was, in fact, little or no substance to the case without that central allegation. Put another way, Plaintiffs' wedding occurred exactly when they decided it should occur, in the spring of 2006. With Defendant having absolutely no responsibility for the wedding delay or the effects

of it,[7] Plaintiffs are left with only vague assertions of "frustration" and similar psychic injury from having received no "contact" from the person at Defendant's hotel responsible for wedding reservations, and from having their efforts to secure a reservation "rebuffed." (Pls.'s Compl. at ¶¶ 10, 11.) These claims are dubious at best, even when supplemented with Plaintiffs' deposition testimony about one or two employees at the hotel looking at and speaking to them in a way that they, especially Mrs. Keck, interpreted as diffident and based upon her race.

The court concludes that Plaintiffs' claim that the delay – with all its various alleged ill effects – was caused by Defendant is an allegation absolutely central to this litigation, and is factually inextricable from the allegation of racial discrimination itself. Being patently and admittedly false, it directly informs the level of monetary sanctions that should be imposed.

Defendant attests to expending $3,542.54 in taxable costs and $32,558.80 in attorney fees in defending this matter. (Def.'s Mot., Ex. D at 2.) Within the court's discretion, *Albright*, 788 F.2d at 1222, and considering the central importance Plaintiffs' falsehood would have played in Defendant's case analysis if it were true, it is reasonable to ascribe a total of $27,000, being approximately 75% of Defendant's total cost of litigation, as a sanction against Plaintiffs and their attorney. This amount leaves Defendant shouldering a monetary burden of about $10,000 to investigate and defend a

---

[7] Plaintiffs alleged that the delay and change of locations resulted in less convenient tuxedo rentals, a smaller wedding congregation, and hotel accommodations that did not include complimentary breakfast. (Pls.'s Compl. at ¶¶ 13, 14).

case that probably should not have been brought at all,[8] and results in a sanction sufficiently limited to an amount which is not overly harsh, but still significant enough to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).[9] Each Plaintiff knew of the falsehood from the inception of this litigation on March 12, 2007 until its resolution through summary judgment on June 30, 2008 – a period of 476 days. Attorney Dane was aware of the falsehood at least as early as Plaintiff's deposition on October 29, 2007 and allowed it to continue until summary judgment was granted on June 30, 2008 – a period of 245 days. In other words, Dane was aware of the significance of Plaintiffs' false statement in the complaint for one-half the time Defendant spent defending this matter. The court finds Dane's behavior – an officer of the court leaving unamended a complaint containing such an important falsehood – to be particularly disquieting. As such, the court attributes to the

---

[8] This is not to rescind the court's earlier finding that the case was not utterly without evidentiary support at its outset, but only to say that it would be an extremely rare attorney, in the court's view, who would be willing to file this suit having only the *true* allegations presented to him, i.e., that Plaintiffs visited Defendant's hotel, tried unsuccessfully to get in touch with the planner during the summer corporate changeover, but ultimately suffered no real damage since they decided to delay the hoped-for wedding to allow for the birth of their child.

[9] Based on known information, the sanction amount is not beyond the sanctioned individuals' ability to pay. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne, & Taylor*, 875 F.2d 1224, 1230 (6th Cir. 1989). First, Plaintiffs' planned, and were willing, to pay $12,000 for their wedding (Pls.'s Resp. at 1), paid the $455 filing fee on appeal (Dkt. # 29), and were both gainfully employed at the time of their complaint. Second, Dane is an attorney with an office in Washington, D. C., and a nationwide practice. He has currently pending two civil cases in this District, and has been attorney of record in at least six other suits locally in recent years. His website prominently notes many litigation victories, including a recent $11 million verdict against certain Ohio municipalities, and states that Dane is "nationally recognized in the field[ ] of fair housing." See http://www.relmanlaw.com/ (last visited April 20, 2009).

two Plaintiffs, jointly and severally, a monetary sanction of $12,000 payable forthwith to Defendant.  To attorney Stephen Dane is attributed the full amount of the remaining cost, $15,000, payable forthwith to Defendant.

### IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Rule 11 Sanctions . . ." [Dkt. # 20] is GRANTED.

      S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 23, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 23, 2009, by electronic and/or ordinary mail.

      s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522